FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN 1 5 2021

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DARRYLE BUTLER,                    *

      Movant,                    *

v.                                 *     Civil No. 1:21-cv-_____
                                         Case No. 1:16-cr-00411-ELR-AJB-2
UNITED STATES OF AMERICA,           *

      Respondent.               *

### SECOND-IN-TIME MOTION PURSUANT TO 28 U.S.C. § 2255

COMES Movant, DARRYLE BUTLER ("Butler"), appearing *pro se*, and in

support of this motion would show as follows:

### I. PRELIMINARY STATEMENT

Butler respectfully requests that this Court be mindful that *pro se* complaints are

to be held "to less stringent standards than formal pleadings drafted by lawyers," and

should therefore be liberally construed. *Caldwell v. Warden,* 748 F.3d 1090 (11th Cir.

2014); *Estelle v. Gamble*, 429 U.S. 97 (1976)(same); and *Haines v. Kerner*, 404 U.S.

519 (1972)(same).

### II. JURISDICTION

Jurisdiction is vested in this Court to hear and adjudicate the merits under 28

U.S.C. § 2255 or any other applicable rules governing it.

# III. <u>STATEMENT OF THE CASE</u>

## A.    <u>Procedural Background</u>

On December 6, 2016, a grand jury sitting in the United States District Court for the Northern District of Georgia, Atlanta Division, returned a four (4) count Indictment charging Butler. See Doc. 2.[1] Count 1 charged Butler with Conspiracy to Steal Firearms from Federally Licensed Firearms Dealers and to Possess, Sell, and Dispose of Said Firearms, in violation of 18 U.S.C. §§ 922(j), 922(u), and 371. *Id.* Count 2 charged Butler with Aiding and Abetting to Steal From a Premise Licensed to Engage in the Business of Importing, Manufacturing, or Dealing in Firearms, in violation of 18 U.S.C. §§ 922(u) and 924(i)(1). *Id.* Count 3 charged Butler with Aiding and Abetting to Possess, Receive, Conceal, Store, Barter, Sell, and Dispose At Least One Stolen Firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). *Id.* Count 4 charged Butler with Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 841(a)(1). *Id.* The Indictment also contained a Forfeiture Provision, pursuant to 21 U.S.C. § 853(p) and 28 U.S.C. § 2461(c). *Id.*

---

[1]    "Doc." refers to the Docket Report in the United States District Court for the Northern District of Georgia, Atlanta Division in Criminal No. 1:16-cr-00411-ELR-AJB-2, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

On September 19, 2017, a Change of Plea Hearing was held and Butler entered a plea of guilty as to all counts of the Indictment. See Doc. 152.

On January 9, 2018, Butler was sentenced to a total term of 110 months' imprisonment, 3 years Supervised Release, $601.08 in Restitution, and a Mandatory Special Assessment Fee of $400. See Docs. 184, 186.

On February 5, 2018, Butler timely filed a Notice of Appeal. See Doc. 188.

On September 17, 2018, the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") issued and Order affirming the judgment of the District Court. See Doc. 200.

**B.**   **Statement of the Relevant Facts**

1.   Offense Conduct

Beginning on a date unknown, but at least by in or about May 2016, to in or about July 2016, in the Northern District of Georgia and elsewhere, the defendants, Devonnaire Coffey, Darryle Butler, Bilal Maxey, Natasha Turner, Asia Keith, Prather Abrams, conspired, agreed, and had a tacit understanding with each other to violate Title 18, United States Code, Sections 922(j) and 922(u), that is to steal from the premise of a person licensed to engage in the business of dealing in firearms at least one firearm in the licensee's business inventory that had been shipped and transported in interstate and foreign commerce, and to possess, sell, and dispose of said stolen

firearms, which had been shipped and transported in interstate and foreign commerce, while knowing and having reason to believe that one or more of the firearms were stolen.

2.    Plea Proceeding

On September 19, 2017, a Change of Plea Hearing was held before Judge Eleanor L. Ross. See Doc. 152. Butler entered a non-negotiated plea of guilty to Counts 1, 2, 3, and 4 of the four-count Indictment. See PSR ¶ 9. The case was referred to the Probation Office for the preparation of the PSR.

3.    Presentence Report Calculations and Recommendations

On December 4, 2017, the Probation Office prepared Butler's PSR, which was revised on December 26, 2017. See Doc. 192. The 2016 Guidelines Manual, incorporating all guideline amendments, was used to determine Butler's offense level. Counts 1 through 4 were grouped pursuant to USSG § 3D1.2(d). See PSR ¶ 55. The PSR recommended a Base Offense Level of 20 because Butler committed the instant offense subsequent to sustaining a felony conviction of a crime of violence, criminal attempt robbery, pursuant to USSG § 2K2.1(a)(4)(A). See PSR ¶ 56. Eight (8) levels were added because the offense involved 129 firearms, pursuant to USSG § 2K2.1(b)(1)(D). See PSR ¶ 57. Two (2) levels were added because firearms were stolen, pursuant to USSG § 2K2.1(b)(4)(A). See PSR ¶ 58. Another two (2) levels were

4

added for obstruction of justice, pursuant to USSG § 3C1.1. See PSR ¶ 62. Butler received a three (3) level reduction for acceptance of responsibility, pursuant to USSG §§ 3E1.1(a) and (b). See PSR ¶ 65. The PSR calculated Butler's Total Offense Level to be level 28. See PSR ¶ 66. Butler's total criminal history points of 7, placed him in Criminal History Category IV. See PSR ¶ 73. Based upon a Total Offense Level of 28 and a Criminal History Category of IV, the guideline imprisonment range was 110 to 137 months. See PSR ¶ 85.

### 4. Sentencing Proceeding

On January 9, 2018, a Sentencing Hearing was held before Judge Eleanor L. Ross. See Doc. 184. The Court sentenced Butler to a total term of 110 months' imprisonment. This term consists of a term of 55 months on Count 1; and 55 months on each of Counts 2, 3, and 4 to run concurrently with each other and consecutively to Count 1. See Doc. 186. Upon release from imprisonment, Butler shall be on supervised release for a term of 3 years on each Counts 1, 2, 3, and 4 to run concurrently for a total term of 3 years. *Id.* at 4. The Court ordered payment of $601.08 in Restitution and a Mandatory Special Assessment Fee of $400. *Id.* at 1, 6. A timely Notice of Appeal was filed on February 5, 2018. See Doc. 188.

4.    Appellate Proceeding

John Lovell, appointed counsel for Darryle Butler in this direct criminal appeal, has moved to withdraw from further representation of the appellant and filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). The Eleventh Circuit's independent review of the entire record reveals that counsel's assessment of the relative merit of the appeal is correct. Because independent examination of the entire record reveals no arguable issues of merit, counsel's motion to withdraw was granted, and Butler's convictions and sentences were affirmed. See *USA v. Darryle Butler*, No. 18-10430 (11th Cir. 2018).

## IV. STATEMENT OF THE GROUND FOR RELIEF

Whether, due to the extraordinary and unique circumstances arising after the Judgment was entered in this case, Butler's sentence is now in violation of the Constitution and the Laws of the United States and his conviction and sentence must be vacated.

### A.    Standard of Review

Prisoners may file second-in-time petitions based on events that do not occur until a first petition is concluded. See *Panetti v. Quarterman*, 551 U.S. 930, 943-44 (2007). In *Panetti,* the Court concluded that because the petitioner's *Ford* claim did not ripen until after his first habeas petition was fully adjudicated on the merits, his

subsequent petition was not "second or successive" under AEDPA. The Court rejected

the state's argument that a prisoner contemplating a future Ford claim must preserve

that claim by filing it in his or her first habeas petition. *Id.* at 943, 946. It explained that,

were such an interpretation of "second or successive" correct, "'the implications for

habeas practice would be far reaching and seemingly perverse.'" *Id.* at 943. "A

prisoner would be faced with two options: forgo the opportunity to raise a *Ford* claim

in federal court; or raise the claim in a first federal habeas application (which generally

must be filed within one year of the relevant state-court ruling), even though it is

premature." *Id.*

In *Stewart v. United States*, 646 F.3d 856 (11th Cir. 2011), relying on *Panetti,*

the Court held that because the basis for Stewart's Johnson claim did not exist before

his proceedings on his initial § 2255 motion concluded, Stewart's numerically second

motion is not "second or successive," and § 2255 (h)'s gatekeeping provision did not

apply. And because attempting to raise his *Johnson* claim in his initial § 2255 motion

would have been an empty formality, Stewart was permitted to raise it in a second,

diligently pursued § 2255 motion. Accordingly, the Court reversed and remanded for

resentencing consistent with this opinion.

Eleventh Circuit precedent requires review of a district court's interpretation of

the sentencing guidelines be *de novo* and its factual determinations for clear error. See

*United States v. Norris*, 452 F.3d 1275, 1280 (11th Cir. 2006); *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002) *United States v. Pinion*, 4 F.3d 941, 943 (11th Cir.1993).

## B.  <u>Discussion</u>

Section 2255 is designed to correct fundamental constitutional or jurisdictional errors, which would otherwise "inherently result in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979), or "an omission inconsistent with the rudimentary demands of fair procedure," *Hill v. United States*, 368 U.S. 428 (1962). When competent proof establishes a dispute as to a material factual issue brought under a § 2255 motion, the Court must hold an evidential hearing. See *Negron v. City of Miami Beach*, 113 F.3d 1563, 1570 (11th Cir. 1997).

The Supreme Court has held that where a claim was not ripe at the time of an initial habeas petition, a later habeas petition raising that claim will not be considered "second or successive." See *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007). A second-in-time collateral claim based on a newly revealed actionable violation is not second-or-successive for purposes of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Consequently, such a claim is cognizable, regardless of whether it meets AEDPA's second-or-successive gatekeeping criteria. The Eleventh Circuit urged the district court to rehear this case *en banc* in order to reevaluate the framework in

8

*Tompkins v. Secretary, Department of Corrections*, 557 F.3d 1257 (11th Cir. 2009).

The *Tompkins* Court held that a second-in-time collateral motion based on a newly revealed Brady violation is not cognizable if it does not satisfy one of AEDPA's gatekeeping criteria for second-or-successive motions. The Court explained that Tompkins was indistinguishable from the facts and law in this case, but Tompkins was fatally flawed and the rule established in Tompkins eliminated the sole fair opportunity for petitioners to obtain relief. Because the Court was bound by Tompkins, the Court held that petitioner's 2011 motion was second or successive under 28 U.S.C. 2255(h). See *Scott v. United States*, 890 F.3d 1239 (11th Cir. 2018)

> **Due to the Extraordinary and Unique Circumstances Arising after the Judgment Was Entered in this Case, Butler's Sentence Is Now in Violation of the Constitution and the Laws of the United States and His Conviction and Sentence must Be Vacated.**

1. In Light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), Butler's Prosecution Under 18 U.S.C. § 922(g) Is Null and Void Because the Government Was Not Able to Prove Both That Butler Knew He Possessed a Firearm and That He Knew He Belonged to the Relevant Category of Persons Barred from Possessing a Firearm.

Butler's sentence was driven by his conviction under 18 U.S.C. § 922(g). This judgment resulted in a 110-month sentence. As such, because he is actually innocent of said conviction, his felon in possession of a firearm charge should be dismissed and his sentence should be vacated.

In *Rehaif*, the Supreme Court held that, to convict a defendant of violating §
922(g) and § 924(a)(2), the government must show not only that the defendant knew
he possessed a firearm, but "also that he knew he had the relevant status when he
possessed it." Opinion ("Op.") at 1. The Court states: "We conclude that in a
prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove
both that the defendant knew he possessed a firearm and that he knew he belonged to
the relevant category of persons barred from possessing a firearm." See Opinion
("Op.") at 11 (emphases added).

This holding was reached in a 7-2 decision in *Rehaif v. United States*, 139 S. Ct.
2191 (2019), authored by Justice Breyer.

In *Rehaif,* Petitioner Ali Rehaif came to the United States "on a nonimmigrant
student visa to attend university." Op. at 2. But "[a]fter he received poor grades," the
university dismissed him and "told him that his 'immigration status' would be
terminated unless he transferred to a different university or left the country." *Id.* Rehaif
did neither, but subsequently "visited a firing range, where he shot two firearms." *Id.*
"The Government learned about his target practice" and prosecuted him for possessing
firearms as an alien unlawfully in the United States, in violation of § 922(g) and §
924(a)(2). At Rehaif's trial, "the judge instructed the jury (over Rehaif's objection) that
the 'United States is not required to prove' that Rehaif 'knew that he was illegally or

unlawfully in the United States.'" Op. at 2. The jury convicted, and the Eleventh Circuit affirmed. The Supreme Court reversed, ruling for Petitioner Rehaif.

Section 922(g) makes it a federal offense for nine categories of people to possess firearms, "including felons [§ 922(g)(1)] and aliens who are 'illegally or unlawfully in the United States.'" Op. at 1 (quoting 18 U.S.C. § 922(g) (5)(A)). "A separate provision, § 924(a)(2), adds that anyone who 'knowingly violates' the first provision shall be fined or imprisoned for up to 10 years." Op. at 1 (emphasis in opinion).

That has now changed. The Supreme Court ruled that in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2) (they go together), the Government must prove both that the defendant knew he or she possessed a firearm and that the defendant knew he or she knew he belonged to the relevant category of persons barred from possessing a firearm.

Whether a criminal statute requires the government to prove that the defendant acted knowingly, the Court said, is a question of congressional intent. There is a longstanding presumption that Congress intends to require a defendant to possess a culpable mental state regarding "each of the statutory elements that criminalize otherwise innocent conduct." This is normally characterized as a "presumption in favor of scienter."

11

In 922(g) and 924(a)(2), Justice Breyer wrote for the 7-2 decision, the statutory text supports the presumption. It specifies that a defendant commits a crime if he or she "knowingly" violates § 922(g), which makes possession of a firearm unlawful when the following elements are satisfied: (1) a status element; (2) a possession element (to "possess"); (3) a jurisdictional element ("in or affecting commerce"); and (4) a firearm element (a "firearm or ammunition"). Aside from the jurisdictional element, the Court said, § 922(g)'s text "simply lists the elements that make a defendant's behavior criminal. The term 'knowingly' is normally read 'as applying to all the subsequently listed elements of the crime.' And the 'knowingly' requirement clearly applies to 922(g)'s possession element, which follows the status element in the statutory text. There is no basis for interpreting 'knowingly' as applying to the second 922(g) element but not the first.

Notably, this issue won't just apply to people who are currently charged. Typically, decisions like these also apply retroactively to people who are on direct appeal from their convictions. That means many people currently languishing in federal custody may have an opportunity to challenge their convictions—a deluge federal courts experienced most recently when the court held that a commonly used sentencing enhancement law was too vague to be enforceable. This case may not resonate solely at the federal level. Many states model their statutes on federal law, and may find

themselves bound to follow the Supreme Court's interpretation where the language is identical.

The Court concluded that the term "knowingly" in § 924(a) provides the *mens rea* for a violation of § 922(g). "The term 'knowingly' in § 924(a)(2) modifies the verb 'violates' and its direct object, which in this case is § 922(g)." Op. at 4. And "§ 922(g) makes possession of a firearm or ammunition unlawful when the following elements are satisfied: (1) a status element (in this case, 'being an alien ... illegally or unlawfully in the United States'); (2) a possession element (to 'possess'); (3) a jurisdictional element ('in or affecting commerce'); and (4) a firearm element (a 'firearm or ammunition')." Op. at 4. So, the jurisdictional element aside, "the text of § 922(g) simply lists the elements that make a defendant's behavior criminal." Op at 4. And those material, non-jurisdictional, elements (of a § 922(g) offense) are: prohibited status, possession, and the element that the thing possessed qualifies as a firearm or ammunition.

The Court concluded that, "by specifying that a defendant may be convicted only if he 'knowingly violates' § 922(g), Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)." Op. at 5. Thus, "[a] defendant who does not know that he is an alien 'illegally or unlawfully in the United States' does not have the guilty state of mind that the statute's language and purposes require." Op. at 9.

The Court said it expressed "no view, however, about what precisely the Government must prove to establish a defendant's knowledge of status in respect to other § 922(g) provisions not at issue here." *Id.*

In *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), the Court held the failure to advise a defendant of the *Rehaif* element at his guilty plea is "a structural error that requires the *vacatur* of [his] guilty plea and conviction" on plain error review. See *Gary*, 954 F. 3d. at 200. This is so even if the defendant previously served more than a year in prison.

As the Fourth Circuit explained, "the Supreme Court has recognized that a conviction based on a constitutionally invalid guilty plea cannot be saved 'even by overwhelming evidence that the defendant would have pleaded guilty regardless.'" *Id.* at *5 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 84 n.10 (2004)). And a guilty plea "does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 618 (1998)). Thus, the error of not informing a defendant who pleads guilty to § 922(g) that the statute requires that he "knew he belonged to the relevant category of persons barred from possessing a firearm," *Rehaif*, 139 S. Ct. at 2200, falls into "'a special category of forfeited errors that can be corrected regardless of their effect on

14

the outcome,' [as] 'not in every case' does a defendant have to 'make a specific showing of prejudice to satisfy the "affecting substantial rights" prong'" of plain error review. *Gary*, 2020 WL 1443528, at *6 (quoting *United States v. Olano*, 507 U.S. 725, 735 (1993)). "Such errors are referred to as 'structural' because they are 'fundamental flaws' that 'undermine[] the structural integrity of [a] criminal tribunal.'" *Id.* (quoting *Vasquez v. Hillery*, 474 U.S. 254 (1986)).

"[S]uch errors necessarily affect substantial rights." *Id.* at 263-64. Indeed, "the district court failed to inform Gary that knowledge of his prohibited status was an element of the offense, denying him any opportunity to decide whether he could or desired to mount a defense to this element of his § 922(g)(1) charges— as it was his sole right to do. Thus, in accepting his uninformed plea, the court denied Gary's right to make a knowing and intelligent decision regarding his own defense." *Gary*, 954 F.3d at 207. "To allow a district court to accept a guilty plea from a defendant who has not been given notice of an element of the offense in violation of his Fifth Amendment due process rights 'would surely cast doubt upon the integrity of our judicial process.' We cannot envision a circumstance where, faced with such constitutional infirmity and deprivation of rights as presented in this case, we would not exercise our discretion to recognize the error and grant relief." *Id.* (citation omitted).

See *Parks v. United States*, 767 F. App'x 509 (4th Cir. 2019). Petitioner was

convicted under 18 U.S.C. §§ 922(g) and 924, which prohibit "knowingly possessing a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year." Petitioner was sentenced to twenty-four months following the revocation of his supervised release, and he was additionally charged under §§ 922(g) and 924 for the same firearm possession. Petitioner filed a motion to dismiss the indictment, arguing double jeopardy. The district court denied the motion, citing *Johnson v. United States*, 529 U.S. 694 (2000), and *United States v. Woodrup*, 86 F.3d 359 (4th Cir. 1996). Petitioner appealed his conviction to the Fourth Circuit, which held that *Woodrup* precluded Petitioner's double jeopardy argument. The Supreme Court previously ruled in *Rehaif v. United States*, 139 S. Ct. 2191 (June 21, 2019), that the state must prove defendants knew both (1) that they were in possession of a firearm and (2) that they held the relevant status at the time of possession. Petitioner asks the Court to reverse the Fourth Circuit because it erred by not applying Rehaif as the controlling precedent. The Court granted certiorari and issued an order to vacate the judgment and remand to the Court of Appeals for the Fourth Circuit for further consideration in light of *Rehaif* is vacated and remanded.

See also, *United States v. Cook*, 914 F.3d 545 (7th Cir. 2019). In *Cook*, a jury convicted Blair Cook of being an unlawful user of a controlled substance (marijuana) in possession of a firearm and ammunition. See 18 U.S.C. §§ 922(g)(3) (proscribing

possession of firearm by unlawful user of controlled substance), 924(a)(2)(specifying penalties for one who "knowingly" violates section 922(g)). Cook appealed his conviction, contending that the statute underlying his conviction is facially vague, that it improperly limits his Second Amendment right to possess a firearm, and that the district court did not properly instruct the jury as to who constitutes an unlawful user of a controlled substance. We affirmed Cook's conviction. *Cook*, 914 F.3d at 547. The Supreme Court subsequently held in *Rehaif v. United States*, 139 S. Ct. 2191, 2194, 2200 (2019), that the knowledge element of section 924(a)(2) requires the government to show that the defendant knew not only that he possessed a firearm, but that he belonged to the relevant category of persons barred from possessing a firearm. Consistent with the prior case law of this court, the superseding indictment in this case did not allege, nor the jury instructions advise the jury that it must find, that Cook knew he was an unlawful user of a controlled substance. Cook's petition for a writ of certiorari was pending at the time that Court was considering *Rehaif*, and Cook had suggested that if the Court in *Rehaif* expanded the knowledge requirement of section 924(a)(2) to include knowledge of one's status, the Court ought to remand his case for further proceedings. Petition for Writ of Certiorari at 25–26, *Cook v. United States*, No. 18-9707 (U.S. June 12, 2019). The Court subsequently granted Cook's petition, vacated our decision sustaining his conviction, and remanded for reconsideration in

17

light of *Rehaif*, as Cook had asked it to do. *Cook v. United States*, 140 S. Ct. 41 (Oct. 7, 2019).Upon reconsideration, we now reincorporate our previous decision, with minor modifications, rejecting Cook's vagueness and Second Amendment challenges to section 922(g)(3) along with his objection to the jury instruction on who constitutes an unlawful user of a controlled substance. But in light of *Rehaif*, we conclude that Cook is entitled to a new trial.

In light of *Rehaif*, if for no other reason than 922(g) is one of the most commonly charged federal crimes, and it sure seems like a substantive (and therefore retroactive) rule. Hence, Butler's felon in possession of a firearm is now null and void because the government was not able to prove both that Butler knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.

2.    USSG § 2K2.1(a)(4)(A)

**Note:** The PSR recommended a Base Offense Level of 20 because Butler committed the instant offense subsequent to sustaining a felony conviction of a crime of violence, criminal attempt robbery, pursuant to USSG § 2K2.1(a)(4)(A).

USSG § 2K2.1(a) reads as follows:

(4) 20, if—

(A) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense; or

(B) the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine; or (II) firearm that is described in 26 U.S.C. § 5845(a); and (ii) defendant (I) was a prohibited person at the time the defendant committed the instant offense; (II) is convicted under 18 U.S.C. § 922(d); or (III) is convicted under 18 U.S.C. § 922(a)(6) or § 924(a)(1)(A) and committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person –

See USSG § 2K2.1(a)(4)(A)-(B). Further, "crime of violence" has the meaning given that term in §4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2.

The Definitions of Terms Used in Section 4B1.1. The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

USSG § 4B1.2.

Robbery convictions under a growing number of state statutes, in a growing number of federal circuits, no longer qualify as a crime of violence under the

Guidelines.

According to the Ninth Circuit's recent decision in *United States v. Edling*, 891 F.3d 1190 (9th Cir. 2018), amended and superseded by *United States v. Edling*, 2018 WL 3387366 (9th Cir. July 12, 2018) for example, Nevada state robbery does not categorically match "generic robbery" under the enumerated-offenses clause of § 4B1.2 since the state offense can be accomplished by instilling fear of injury to property alone. *Id.* at \*3-\*4. Thus, even though the defendant in *Edling* put a gun to a victim's head and actually shot a second victim, the Ninth Circuit held that the defendant's robbery conviction is nonetheless not a crime of violence for purposes of § 4B1.2 because a hypothetical defendant could have violated the state statute by obtaining the victim's property "merely" by threatening to burn down his home or business. See Pre-Sentence Investigation Report, *United States v. Edling*, 891 F.3d 1190 (9th Cir. 2018).

Similarly, following the Sixth Circuit's decision in *United States v. Yates*, 866 F.3d 723 (6th Cir. 2017). Ohio state robbery is no longer a crime of violence under the Guidelines. The circuit reasoned that, in contrast to the elements clause of § 4B1.2, "only a minimal level of force is needed to sustain a conviction" for robbery in Ohio and, regarding the enumerated-offenses clause, that the state robbery statute "reaches conduct outside the scope of that covered by the generic definition." *Id.* at 734 (quoting

*United States v. Cooper*, 739 F.3d 873, 880 (6ᵗʰ Cir. 2014)). Accordingly, the defendant, who had amassed an encyclopedic rap sheet consisting of 24 felonies—including convictions in Ohio for robbery and drug trafficking—nevertheless fails to qualify as a career offender in the Sixth Circuit. See *Yates*, 866 F.3d at 729 et seq. The First and Fourth Circuits have likewise issued problematic opinions with respect to state robbery statutes from New York and Georgia. See *United States v. Steed*, 879 F.3d 440, 450-51 (1ˢᵗ Cir. 2018) (New York state second-degree robbery not a crime of violence); *United States v. Jackson*, 713 Fed. App'x 172, 174 (4ᵗʰ Cir. 2017) (Georgia state robbery not a crime of violence).

Nor are federal criminal statutes immune from the consequences of the categorical approach. In a case in which the defendant obtained controlled substances from a pharmacy employee by threatening violence while carrying a firearm, the Tenth Circuit held that a defendant's conviction for Hobbs Act robbery under 18 U.S.C. § 1951 is not a crime of violence under the enumerated-offenses clause of § 4B1.2(a)(2). *United States v. O'Connor*, 874 F.3d 1147, 1153 (10ᵗʰ Cir. 2017) The circuit concluded that although Hobbs Act robbery both encompasses robbery and extortion, it is somewhat broader than generic robbery and, as concerns extortion, encompasses mere threats to property, which have been excluded from the Guidelines' definition of extortion since August 2016. *Id.*

In this case, Butler's Base Offense Level of 20 pursuant to USSG § 2K2.1(a)(4)(A), is now unconstitutionally imposed where the factual basis of the guilty plea is now insufficient because the Butler's criminal attempt robbery is not categorically a crime of violence.

At issue in this § 2255 is whether criminal attempt robbery qualifies as a crime of violence under USSG § 4B1.2. Under this statute, a "crime of violence" is defined as a felony that either: (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "use-of-force clause"); or (B) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). 18 U.S.C. § 924(c)(3)(A) & (B).

In light of *Sessions*, criminal attempt robbery no longer qualifies as a crime of violence under either the use-of-force clause or the residual clause of § 924(c)(3). Hobbs Act robbery categorically fails to qualify as a crime of violence under the use-of-force clause because it can be committed without physical force or the threatened deployment of the same and because it can be accomplished by mere "intimidation," which does not require the intentional use or threat of use of violent physical force for two reasons. First, this Court's precedent establishes that intimidation is the threatened infliction of bodily injury, which is not equivalent to the threatened use

of force. Second, precedent requires that a use or threat of use of force be intentional, but intimidation may occur even if the defendant did not intend to make a threat. And criminal attempt robbery cannot qualify as a "crime of violence" under § 924(c)(3)'s residual clause, because, under the reasoning of *Johnson* and *Dimaya* that clause is void for vagueness under the Due Process Clause of the Fifth Amendment.

Therefore, it is equitable that Butler be resentenced, in view of the fact that his Georgia criminal attempt robbery conviction does not qualify as a "crime of violence."

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Butler's sentence must be vacated for resentencing.

Respectfully submitted,

Dated: June 9, 2021

DARRYLE BUTLER
REG. NO. 70501-019
FCI BUTNER MEDIUM II
FEDERAL CORR. INSTITUTION
P.O. BOX 1500
BUTNER, NC 27509

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN 15 2021

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

DARRYLE BUTLER
REG. NO. 70501-019
FCI BUTNER MEDIUM II
FEDERAL COR. INSTITUTION
P.O. BOX 1500
BUTNER, NC 27509

June 9, 2021

Mr. James N. Hatten
Clerk of Court
U.S. District Court
Northern District of Georgia
Atlanta Division
75 Ted Turner Drive, SW
Atlanta, GA 30303-3309

      RE:   *Butler v. United States*
             Civil No. 1:21-cv-_____
             Crim No. 1:16-cr-00411-ELR-AJB-2

Dear Mr. Hatten:

    Enclosed please find and accept for filing Movant's Second-In-Time Motion Pursuant to 28 U.S.C. § 2255. Please submit this document to the Court.

    Thank you for your assistance in this matter.

                Sincerely,

                DARRYLE BUTLER
                Appearing *Pro Se*

*Encl. as noted*

Jarryle Butler 70561-019
Federal Correctional Institution Butner Medium 2
P. O. Box 1500
Butner, NC 27509




CLEARED
JUN 15 2021
U.S. Marshals Service
Atlanta, GA

Mr. James N. Hatten
Clerk of Court
U.S. District Court
Northern District of Geo
Atlanta Division
75 Ted Turner Drive, S
Atlanta, Ga 30303-33